*97 OPINION.
Van Fossan:
The petitioner contends that it realized no taxable gain from the cancellation of its lease with the bank but, on the contrary, sustained a loss in the transaction. ,The respondent seeks to tax the petitioner on the full amount of the cash received ($45,000 less fees and commissions of $1,200, or a net of $43,800) and also on the $9,000 representing the fair market value at the time of cancellation of the bank building erected on the leased land.
The petitioner contends that the correct criterion is a comparison of the petitioner’s situation immediately before the cancellation of the lease with that thereafter; that the value of the land itself was $90,000 before and $36,000 after the transaction; that the petitioner received a net sum of $43,800 and thus had assets worth $10,200 less after the cancellation than before it. Further, it is urged that the value of the building on the land in 1912 was $10,000 and the value of the bank building in 1937 was $9,000; wherefore, petitioner suffered an additional diminution of $1,000 in assets.
The case of Warren Service Corporation v. Commissioner, 110 Fed. (2d) 723 (affirming on this point 39 B. T. A. 856), presented a situation in some respects similar to that found here. There, by agreement, a deposit of $125,000 was retained by the lessor upon the cancellation of the lease. Such absolute possession of the deposit by the lessor is essentially the same as the receipt of $43,800, net, in cash by the petitioner. In that case the court held that the present worth of $125,000 was taxable income to the lessor and allowed no offsetting deductible loss by reason of the lessor’s inability to re-lease the property. So here, the diminution in capital value of the petitioner’s property is reflected in the decrease of prospective rentals therefrom. The failure to receive expected profits or profits equivalent to those theretofore received does not support a loss deduction. Estate of Wilton J. Lambert, 40 B. T. A. 802, and cases there cited.
*98 The petitioner cites and relies on Blatt Co. v. United States, 305 U. S. 267; and Helvering v. Bruun, 309 U. S. 461. But we are unable to find in those cases any support for petitioner’s position on this phase of the case. The petitioner also cites Commissioner v. Langwell Realty Corporation, 47 Fed. (2d) 841. In Warren Service Corporation, supra, the Board declined'to follow the Langwell Realty Corporation' case, while the Circuit Court of Appeals, in the same case, stated:
If the ease of Commissioner v. Langwell Realty Corp., 47 Fed. (2d) 841 (C. C. A. 7) is to be read supporting the taxpayer’s contention, we must respectfully decline to follow it as did the Board.
The petitioner argues that the liability to pay $15,128 in bond obligations, payable by the lessee under the requirements of the lease but assumed by the petitioner upon its cancellation, should be deducted from the cash payment, thus producing additional loss from the transaction. The record does not show that the improvements for which the bonds were executed were not beneficial to the petitioner’s property. In this situation we need not further consider the argument that the amount payable on the bond obligations is an allowable deduction. See Mary E. Evans, 42 B. T. A. 246, and cases there cited.
It is obvious from the facts' that the acquisition in 1937 of the bank building, stipulated to be then worth $9,000 apart from the land, in place of a building worth at the time of demolition $10,000, resulted in no taxable gain. See Helvering v. Bruun, supra, in which the unamortized cost of an old building was deducted from the fair market value of a new building in order to arrive at the net fair market value which was adopted by the court as the proper measure of the net gain. Moreover, on the same authority, we are of the opinion .that the difference of $1,000 between the value of the old building and the stipulated value of the bank building should be deducted in determining the net gain realized by the petitioner.

Decision will Toe entered umder Rule 50.